7

FILED
AUG 20 2026
CLERK'S OFFICE
DETROIT

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

Naefertiti Osborne,
Plaintiff,
v.
Lemuel Plummer ,
The Zeus Network,
Defendant.

Case; 2-26- 12565

CONFIDENTIAL DECLARATION EXHIBIT IN SUPPORT OF SEALED STATEMENT

During the relevant discovery period of this case through the present plaintiff sustained personal, contractual, created, commercial, professional, reputational, emotional, and economic damages arising from interactions with the defendant and individuals associated with the Zeus network. The complaint, damages and relief requested arise from events the plaintiff personally experienced in chronologies that formed the factual basis of the claims in this case. After refusing conduct that conflicted with the plaintiffs personal value state, spiritual beliefs, personal boundaries and personal expectations plaintiff experienced management that resulted in; assault, battery, intentional, infliction of emotional distress, tortious interference with perspective, business relationships, commercial, appropriation, unjust, enrichment, copyright related injuries, fraud, inducement, neglect, misrepresentation, invasion of privacy, intrusion upon occlusion, false light, public disclosure of private effects, promissory estoppel, civil, conspiracy, and other actions and damage is not fully detailed here which later could be revealed through this case during and while maintaining professional and personal boundaries, the defendant elevated, providing compensation or professional opportunities that plaintiff beliefs were earned through talent, creativity, modeling, experience, entertainment, experience, business connections, creative works, and participation. Other individuals were aided and assisted in becoming publicly established with the Zeus network based on facts, publications, episodes streamed on the Zeus network, social media publications, endorsements, engagements, concerts, and other affiliations not mentioned here in this written declaration. Plaintiff identifies others similarly situated compared tothat were observed, receiving continued professional opportunities in advancement during the scope of the filed complaint in comparison, plaintiff experience, exclusion, humiliation, and loss of opportunities connected with commercial value, identity, and reputation. Specific comparators possessed knowledge concerning the professional environment, business, production practices, communications, and circumstances surrounding the opportunities that were available during the relevant discovery period. Based upon the timeline of events that the plaintiff personally experienced, the plaintiff's misfortunate treatment was directly connected to interactions with the defendant Lemuel Plummer, and the Zeus network. During the Detroit Michigan audition in 2024 and the Atlanta Georgia audition in 2025 plaintiff became aware that a prior relationship between plaintiff and the defendant Lemuel Plummer was made public through disclosure and plaintiff did not know who disclosed the information.

Plaintiff experienced the comparison between apparent professional benefits and sexualized dynamics as capable of functioning as sexual and professional conditioning. Plaintiff understood targeting to include identifying a woman based upon vulnerability, isolation, financial circumstances, beauty, creative ability, ambition, or other qualities useful to exploitation; trust-building to include affection, attention, love bombing, gifts, money, opportunity, promises, or intimacy creating reliance or perceived obligation; isolation to include weakening relationships and support systems; desensitization to include progressively normalizing boundary-crossing conduct; and coercion to include emotional attachment, professional power, money, threats, relationships, pressure, deception, or dependence being used to obtain compliance. Plaintiff's concerns regarding commercial sexual exploitation also involved the potential overlap between management or control, procuring or arranging access, financial or commercial benefit, inducement, sexual access, money, travel, transportation, television exposure, professional opportunity, and personal relationships. Plaintiff was delayed, separated from other participants, assigned in audition number significantly farther back then plaintiff arrived and registered, plaintiff was retained to specific areas, plaintiff time was mismanaged, intentionally by the defendant, and representatives, agent and employees who were instructed by silent cues, verbal commands, and other untraceable methods, and or because of prejudice and discrimination regarding the plaintiff and issues reported within the complaint. The plaintiff was held, and restrained to only certain access by security, the defendants by physically blocking access and intimidating verbal and physical commands while other auditioners received authorization and permission to enter and indulge in VIP access and other audition activities without explanation and with prejudice.

Plaintiff identifies that reversal between cause and visible effect as a substantial part of the gaslighting Plaintiff experienced. Plaintiff's resulting distrust of certain affiliations is itself a consequence affecting Plaintiff's willingness and ability to develop professional relationships connected with that environment. Within the industry specific professional entertainment relationships can develop through introductions, referrals, collaborations, access, goodwill, visibility, reputation, and trust, interference can affect opportunities Plaintiff cannot specifically identify because Plaintiff cannot know every collaboration that never occurred, referral never received, casting opportunity that never arrived, or professional relationship that otherwise would have developed naturally. Plaintiff understands that one successful opportunity can create subsequent opportunities through visibility, audience development, referrals, professional goodwill, and relationships, meaning interference with one portion of that chain can affect later opportunities that cannot be precisely reconstructed.

The audition footage preserved Plaintiff's music, performances, words, expressions, delivery, cadence where protectable, and other creative contributions, and Plaintiff identifies direct access to that material as relevant to Copyright Infringement claims. Plaintiff's broader copyright framework includes the provisions identified in claims concerning copyrightable subject matter, ownership, exclusive rights, transfers where applicable, infringement, and available remedies. Plaintiff is a victim of the defendant withholding footage. The plaintiff audience could watch an audition but whether audiences could contemporaneously associate Plaintiff's face, voice, performance, creative expression, and professional identity with Plaintiff, thereby affecting attribution, audience recognition, licensing value, marketability, and professional opportunity. Plaintiff's qualifying original expressions audition footage and artistic persona, creative works, and identity was subsequently reproduced, adapted, distributed, publicly performed, publicly

displayed, or commercially exploited, the originating creator, plaintiff absence from contemporaneous public recognition has created additional commercial injury, subject to the copyright remedies legally available under the circumstances.

Plaintiff further recognizes that even people who did not and do not accept a negative characterization of Plaintiff may become professionally cautious merely because litigation or controversy exists, creating additional professional consequences from Plaintiff's act of defending herself. Plaintiff understands that speaking about what occurred can cause exposure to characterizations such as difficult, jealous, bitter, litigious, unstable, disloyal, or somebody who "tells," and that such stigma can discourage future relationships in an industry dependent heavily upon private connections and trust. The plaintiff should not be required to remain silent, underserved, misfortunate or have any fear to report about wrongdoing merely to preserve an appearance of professionalism plaintiff is affected by the provocation to report unlawful action by the defendant, plaintiff was forced to crying about the crimes publicly during the audition, experience anger, being a victim or survivor does not erase Plaintiff's intelligence, professionalism, creativity, success, broader identity, value, or integrity.

Plaintiff recognizes that not every aspect of confidentiality, identity or creativity receives identical legal protection and therefore distinguishes qualifying original expression addressed through copyright law from commercial exploitation of Plaintiff's name, image, likeness, identity, or persona, wrongful commercial benefits addressed through unjust enrichment and restitution, and qualifying false commercial suggestions of endorsement, approval, sponsorship, affiliation, or association addressed through Plaintiff's false-endorsement/false-association theory. Plaintiff considers those distinctions particularly important where aspects of Plaintiff's identity or creative characteristics could be commercially associated with conduct or values Plaintiff actually rejected. Plaintiff did not consent to another person commercially presenting aspects of Plaintiff in a manner suggesting that Plaintiff endorsed identity theft, imitation or a sexualized environment plaintiff refused. Plaintiff experienced exploitation as separating commercially valuable portions of Plaintiff modeling and creative work from Plaintiff's right to control or receive access to records. The defendant has been and currently is withholding, plaintiffs creative work and not promoting the plaintiff from introduction with the Zeus network and relationships with The defendant until now. The defendant and the Zeus network is aware that all of the actions that they have committed and or lack thereof is effectively Black listing. The defendant Black listed the plaintiff prior to 2024 and continued to cyber bully through imitation, aiding and abetting misrepresentation, defamation, harassment, cyber stalking, **deception and the Zeus network not** streaming plaintiff's audion footage or withholding plaintiffs audition recordings is manipulation and exploitation. Plaintiff is personally, mentally sexually, financially, and spiritually damaged by the defendant's **appropriation of plaintiff's persona identity appropriation and commercial appropriation of identity/persona plaintiff has personal knowledge that the defendant intentionally committed these acts as** an attempt to sell plaintiffs (modeling) body, social popularity during relevant discovery periods prior to 2024, 2025 and present. In that description, Plaintiff's body represents physical autonomy, sexuality, beauty, image, likeness, identity, persona, modeling value, presentation, and commercial value, etc.

Plaintiff identifies the damges as the disruption of Plaintiff's own relationships, companionship, family possibilities, professional development, creative growth, peace, and anticipated life

progression. Later developments in the Zeus network and Plummer's relationship and family intensified the facts, history and comparison(s) Plaintiff experienced after returning for professional opportunity, and plaintiff experienced the resulting public contrast as others built and actively possess career, relationships, family, money, travel, connections, visibility, and social success while the defendant intentionally held plaintiff at the auditions in Atlanta, Georgia, physically assaulted her on stage and off stage and also spoke to the plaintiff derogatory on stage on camera during the audition which would the defendant did not upload online or air the footage publicly because it would show admissions of guilt by the defendant and actions. The defendant exploited the plaintiffs creative works from the audition, and also intentionally inflicted emotional distress by mentioning prior engagements between the plaintiff and the defendant. Plaintiff appeared publicly crying in the audition footage from ATLANTA, 2025 and in the audition footage from Detroit 2024 an invasion of privacy was displayed within that audition which caused humiliation and embarrassment. The defendant talked about the plaintiffs physical appearance and sexual assault committed by the defendant, including prior history mentioned in a defamatory way during the Atlanta, Georgia auditions on or around January 31, 2025. In Detroit, Michigan 2024 and in Atlanta, Georgia 2025 during the auditions, the defendant began talking negatively about the plaintiff and explaining what occurred, which exposed the plaintiff to comparison and made the plaintiff appear to look like an outsider to mistake visible success for superiority and Plaintiff's visible distress for inferiority.

Plaintiff identifies unwanted physical or sexual conduct directed toward plaintiff by the defendant and its agents, representatives , employees and affiliates relevant to Civil Assault and the resulting physical, sexual, psychological, emotional, personal, and dignitary injuries in the Complaint. Plaintiff identifies unauthorized disclosure or intrusion involving private personal matters as relevant to Plaintiff's claims concerning Public Disclosure of Private Facts and Intrusion Upon Seclusion and the resulting privacy, dignitary, emotional, relational, reputational, and professional injuries. Plaintiff identifies knowing encouragement, assistance, reinforcement, facilitation, concealment, or coordinated participation as relevant, where recognized by governing law and supported by the underlying conduct, to the defendant Aiding and Abetting. Plaintiff identifies false representations, deceptive promises, or material misrepresentations used to obtain trust, reliance, participation, creative contributions, or professional involvement as relevant to Plaintiff's fraud, fraudulent-inducement, negligent-misrepresentation, and promissory-estoppel damages. Plaintiff identifies qualifying exploitation of original creative expression as relevant throughout to Plaintiff's Copyright Infringement claims and the copyright remedies legally actionable or any infringement established though litigation. Plaintiff identifies qualifying commercial exploitation or false commercial association involving identity as relevant, where applicable, to Plaintiff's commercial-appropriation, unjust-enrichment/restitution, and false-endorsement/false-association theories. Plaintiff identifies the grooming, sexual pressure, professional leverage, inducement, commercial benefit, and exploitation circumstances as relevant to the federal civil remedy pleaded by Plaintiff where the underlying statutory requirements are established.

Plaintiff concludes that Defendant obtained personal and professional access to Plaintiff, gained knowledge of Plaintiff's identity, personality, relationships, modeling career, creative works, artistic expression, professional ambitions, personal boundaries, and commercial value, and maintained access to Plaintiff without investing in, promoting, compensating, crediting, protecting, or professionally advancing Plaintiff. Defendant used the relationship and continued

communications to maintain familiarity with Plaintiff while Defendant and individuals associated with the Zeus Network imitated, appropriated, misrepresented, circulated, and commercially benefited from aspects of Plaintiff's identity, persona, creativity, modeling presentation, personal history, and professional substance. Defendant withheld Plaintiff's audition footage, excluded Plaintiff from professional opportunities, interfered with Plaintiff's professional relationships and connections, damaged Plaintiff's reputation, controlled information concerning Plaintiff, publicly disclosed Plaintiff's prior relationship and personal history, sexualized Plaintiff, physically and sexually violated Plaintiff, cyberbullied Plaintiff, and continued withholding the professional recognition, exposure, attribution, compensation, and opportunities that would have allowed Plaintiff's identity and creative work to remain publicly connected to Plaintiff. Defendant simultaneously elevated and promoted other individuals through programming, compensation, visibility, travel, relationships, social-media exposure, audience development, professional connections, and continuing participation with the Zeus Network while Plaintiff remained excluded and blacklisted. Defendant converted Plaintiff's personal history, emotional reactions, creative expression, sexuality, identity, and resulting controversy into circumstances consistent with the Network's entertainment content while the same controversy damaged Plaintiff's reputation, safety, professional relationships, marketability, and future opportunities. Defendant withheld the complete audition footage while possessing recordings capable of showing Plaintiff crying, angry, distrustful, humiliated, defensive, and emotionally distressed together with Plaintiff's music, performances, creative expression, professional boundaries, and the conduct that produced those reactions. As a result, Plaintiff's visible distress could be separated from its cause, Plaintiff's exclusion could appear to represent lack of professional value, Plaintiff's grief could be characterized as jealousy, Plaintiff's distrust could be characterized as inability to maintain relationships, Plaintiff's anger could be characterized as instability or hostility, and Plaintiff's reporting of Defendant's conduct could become more publicly recognizable than Plaintiff's modeling, creativity, intelligence, talent, professional substance, and accomplishments. Defendant thereby benefited from access to the substance and commercial value of Plaintiff's identity while separating Plaintiff from recognition, promotion, attribution, compensation, professional advancement, audience development, and control of Plaintiff's own public identity. Plaintiff identifies the resulting conduct as deceptive relational exploitation, manipulation, imitation, identity and persona appropriation, commercial exploitation, professional exclusion, reputational interference, and blacklisting. Defendant's conduct damaged Plaintiff's professional trajectory, relationships, reputation, goodwill, marketability, creative control, audience development, economic opportunities, personal safety, peace, family possibilities, and life progression and caused Plaintiff to lose time, relationships, introductions, referrals, collaborations, professional momentum, creative opportunities, and connections that cannot be returned or recreated under the circumstances in which Plaintiff originally would have received otherwise.

*/s/ Naefertiti Osborne*
4698492841
naefertiti@outlook.com
Kansas 67218

8/10/2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2026 a true and correct copy of the declaration and confidentially sealed exhibit and support of statement submitted on August 10, 2026 was sent via mail to 231 W Lafayette Blvd, Detroit, MI 48226.

***/s/ Naefertiti Osborne***
4698492841
naefertiti@outlook.com
Kansas 67218

CERTIFIED MAIL®

5270 4387 2653 25

Retail

U.S. POSTAGE PAID
FCM LG ENV
WICHITA, KS 67276
AUG 10, 2026

48226

RDC 99

$8.69

S2324M501786-29

FROM:
Nderfertiti Osborne
1000 S woodlawn apt 508
wichita Kansas

TO: Theodore Levin United States Courthouse -Clerk
231 W Lafayette Blvd
Detroit, MI 48226

RECEIVED
AUG 20 2026
CLERK'S OFFICE
U.S. DISTRICT COURT

RECEIVED
AUG 20 2026
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHAL

Utility Mailer
10 1/2" x 16"

Ready Post®